**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

**1:26-cv-05833-SHS**

RICHARD LAPHAM,

Plaintiff,

v.

FORTUNA REALTY HOTEL SOHO LLC
DBA HOTEL HUGO SOHO,

Defendant.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT II OF THE FIRST AMENDED COMPLAINT**

Plaintiff Richard Lapham ("Plaintiff" or "Lapham) respectfully submits this memorandum in opposition to Defendant Fortuna Realty Hotel Soho LLC d/b/a Hotel Hugo Soho's ("Defendant" or "Fortuna") motion to dismiss Count II of Plaintiff's First Amended Complaint. Plaintiff respectfully requests that motion be denied.

## I. INTRODUCTION

Fortuna's motion asks the Court to decide factual questions about the meaning, context, and purpose of the false copyright management information alleged in Count II. Those questions cannot be resolved against Plaintiff on a motion to dismiss.

The First Amended Complaint alleges that Lapham created and owns the copyright in the photograph "Twisted Trunk"; that Fortuna obtained access to the Work through a limited agreement authorizing only the production and display of specified large-format artworks; and that the agreement did not authorize Fortuna to incorporate the Work into its logo or branding. Fortuna nevertheless adopted a logo reproducing the Work as its central design and displayed the

words "Hotel Hugo" immediately beneath the Work, indicating that Fortuna was the owner of the Work at issue. On Fortuna's website, the Logo also appeared with a copyright notice identifying Hotel Hugo and terms stating that the website's logos, graphics, and images belonged to Hotel Hugo.

These allegations plausibly identify false copyright management information ("CMI"). The words "Hotel Hugo" did not merely appear somewhere near an unrelated image. The Work was made into the Logo, and "Hotel Hugo" appeared directly beneath it in the position and manner of an ownership mark, or in other words, indicated the CMI of Hotel Hugo. Fortuna's website reinforced that message by claiming ownership of the displayed logos, graphics, and images. In that pleaded context, the challenged information conveyed that Fortuna authored or owned the Work, even though Lapham was its author and copyright owner.

The First Amended Complaint also pleads both aspects of Section 1202(a)'s scienter requirement. It alleges that Fortuna knew Lapham owned the Work, knew its rights were limited to displaying prints, sought additional rights to use the Work in the Logo, and knew those rights were never obtained. It further alleges that Fortuna used the false ownership information to enable vendors and distribution channels to reproduce and display the Logo without seeking permission from the Work's true owner and to conceal the resulting infringement. Fortuna then continued displaying the challenged information after receiving Lapham's written notices.

Fortuna's Answer confirms that it adopted and used the Logo, that the words "Hotel Hugo" appear below it, that its website contains a copyright notice and terms of use, and that the Logo remains in use. Fortuna disputes what those facts mean, but that disagreement presents factual issues—not a pleading defect. The motion should be denied.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires only a short and plain statement showing that the plaintiff is entitled to relief. A complaint need not contain detailed factual allegations, and a claim is plausible when its factual content permits a reasonable inference that the defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Courts strongly disfavor and rarely grant motions to dismiss pursuant to FRCP Rule 12(b)(6). 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 1357, at 598. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.

As *Iqbal* explains, facial plausibility exists when the pleaded factual matter permits a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. The question is plausibility, not whether the plaintiff has already proved the claim.

Rule 9 permits knowledge and intent to be alleged generally, and courts should allow adequately pleaded scienter issues to be resolved by the factfinder rather than on a motion to dismiss. *Lixenberg v. Complex Media, Inc.*, 808 F. Supp. 3d 625, 642 (S.D.N.Y. 2025); citing *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 139 (E.D.N.Y. 2019) ("the Second Circuit requires district courts to be lenient in allowing scienter issues to survive motions to dismiss because such issues are appropriate for resolution by the trier of fact.")

The plausibility standard is not a probability requirement; it asks whether the pleaded facts support more than a sheer possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678.

## III. ARGUMENT

### A. **Plaintiff has Stated a Valid Claim Against Defendant for False Copyright Management Information and that Claim Should Not be Decided in a Motion to Dismiss.**

Rule 9 permits knowledge and intent to be alleged generally, and courts should allow adequately pleaded scienter issues to be resolved by the factfinder rather than on a motion to dismiss. *Lixenberg* 808 F. Supp. 3d at 642 (S.D.N.Y. 2025); citing *Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 139 (E.D.N.Y. 2019) ("the Second Circuit requires district courts to be lenient in allowing scienter issues to survive motions to dismiss because such issues are appropriate for resolution by the trier of fact.")

Count II supplies far more than a conclusory assertion of scienter. It alleges that Fortuna obtained the Work through a limited agreement, knew that Lapham owned it, sought additional rights to use it in the Logo, never obtained those rights, presented the Work with its own ownership information, distributed that presentation through multiple commercial channels, and continued doing so after written notice. Those allegations provide a concrete factual basis from which knowledge and infringement-related intent may reasonably be inferred.

A court addressing a comparable CMI claim held that determining the defendant's role in the alteration or removal of CMI, or whether its use was innocent, was not appropriate on a motion to dismiss; those issues required evidentiary development through discovery, with reasonable inferences drawn for the plaintiff at the pleading stage. *Davidson v. 925 LLC*, 2025 U.S. Dist. LEXIS 4357, 17 (S.D.N.Y. 2025). The same reasoning applies here. Fortuna's insistence that "Hotel Hugo" conveyed only branding, and that it lacked the statutory intent, asks

the Court to choose Fortuna's factual interpretation over the plausible interpretation alleged in the First Amended Complaint.

The contextual meaning of the challenged information likewise cannot be resolved as a matter of law on this record. In *Monroe*, the court held that whether brand elements constituted false CMI and whether they were used with intent to conceal infringement presented factual questions inappropriate even for summary judgment. *Monroe v. Northstar Source Grp., LLC*, 2025 U.S. Dist. LEXIS 134410, 33 (S.D.N.Y. 2025). *Lixenberg* likewise denied a motion to dismiss a DMCA claim after accepting the complaint's well-pleaded allegations as true. *Lixenberg* 808 F. Supp. 3d at 629. Here, whether the integrated presentation of the Work, the words "Hotel Hugo," the copyright notice, and the ownership terms signaled authorship or ownership—and whether Fortuna used that presentation to facilitate or conceal infringement—are questions for the factfinder, not grounds for dismissal of an adequately pleaded claim.

Because the First Amended Complaint plausibly alleges false CMI, knowledge, and infringement-related intent, Count II cannot be decided on Fortuna's competing account of the facts at the pleading stage.

### B. <u>Even if the Court Decides to Evaluate the CMI Claims on Summary Judgment, The First Amended Complaint Plausibly Alleges That Fortuna Provided and Distributed False CMI.</u>

Section 1202(a) prohibits a person from knowingly providing or distributing false CMI with the intent to induce, enable, facilitate, or conceal infringement. 17 USCS § 1202. CMI includes the name of, and other identifying information about, the author or copyright owner of a work when conveyed in connection with copies or displays of that work. *Fischer v. Forrest*, 968 F.3d 216, 223 (2d Cir. 2020).

To state a Section 1202(a) claim, a plaintiff must allege that the defendant provided or distributed CMI, that the information was false, that the defendant knew it was false, and that the

defendant acted with the intent to cause or conceal infringement. *Penske Media Corp. v. Shutterstock, Inc.*, 548 F. Supp. 3d 370, 381 (S.D.N.Y. 2021). The First Amended Complaint alleges each element. ECF 31.

**1. The meaning of "Hotel Hugo" Must be Evaluated in the Context Alleged in the Amended Complaint.**

Fortuna's principal argument—that "Hotel Hugo" necessarily identifies only the hotel or its brand—disregards the pleaded context.

The First Amended Complaint alleges that Fortuna reproduced the Work as the centerpiece of the Logo and placed "Hotel Hugo" immediately beneath it. ECF 31 at ¶ 22. It further alleges that the words traveled with the Work wherever the Logo was displayed, in the position and manner of an ownership mark. *Id.* at ¶ 23. Those allegations support the reasonable inference that "Hotel Hugo" identified the purported author or owner of the artwork forming the Logo, not merely the user of an unrelated photograph.

Section 1202(c) does not require CMI to be embedded within the work itself. Information qualifies when it is conveyed in connection with the work, and author-identifying information appearing next to an image may constitute CMI. *Agence Fr. Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011). CMI need only be accessible in conjunction with, or appear with, the work being accessed. *Fischer*, 2017 U.S. Dist. LEXIS at 42.

The statutory inquiry is therefore contextual. The placement of information may affect the ultimate determination of intent, but it presents a factual issue that cannot be resolved on a motion to dismiss. *Morel*, 769 F. Supp. 2d at 305. Here, the alleged placement is direct: the Work is the Logo's central design, and "Hotel Hugo" appears immediately beneath it. That is enough to permit a reasonable inference that the information identifies Fortuna as the artwork's author or owner.

Fortuna's characterization of itself as only a "user" of the Work does not defeat that inference. The First Amended Complaint does not rely merely on the appearance of a business name near copyrighted material. It alleges that Fortuna transformed the Work into its identifying mark and presented the Work and its own name as a single integrated Logo. Whether viewers understood that integrated presentation as an assertion of authorship or ownership is a factual question that cannot be resolved by adopting Fortuna's preferred interpretation at the pleading stage.

**2. The Website Copyright Notice and Terms of Use Reinforce the Pleaded Ownership Representation.**

The allegations concerning Fortuna's website provide additional context. The First Amended Complaint alleges that the Logo appeared with a notice such as "© [year] Hotel Hugo" and "All rights reserved," as well as terms stating that all logos, graphics, and images on the website were Hotel Hugo's property. ECF 31 at ¶ 22; Ex. 4. Fortuna admits that the website footer contains a general copyright notice and terms of use, although it disputes their legal significance.

A copyright owner's name and information appearing in a copyright notice fall within the statutory definition of CMI. *Fischer*, 968 F.3d at 223. The First Amended Complaint therefore does not rely on proximity alone. It alleges an integrated display in which the Work appeared as Fortuna's Logo, "Hotel Hugo" appeared immediately beneath the Work, and Fortuna's copyright notice and terms claimed ownership of the website's logos, graphics, and images.

Fortuna argues that its footer and terms might concern the website or the resulting Logo rather than Lapham's underlying Work. But the First Amended Complaint alleges that the Work itself is the Logo's central design, not an incidental image appearing elsewhere on the website. At this stage, the Court may reasonably infer that Fortuna's express claim to the logos, graphics,

and images displayed on the website encompassed the Work as incorporated into the Logo. Because the alleged ownership information appeared with the Logo incorporating the Work and expressly extended to the website's logos, graphics, and images, Count II plausibly alleges the required connection.

**3. The CMI Added by Fortuna was False.**

The First Amended Complaint alleges that Lapham created the Work, owns its copyright, and never assigned the copyright or authorized Fortuna to use the Work for the purpose of a Logo. It further alleges that Fortuna is neither the author nor the copyright owner of the Work.

A copyright owner's name and information appearing in a copyright notice fall within the statutory definition of CMI. *Fischer*, 968 F.3d at 223. Accordingly, once the challenged presentation is reasonably understood to identify Fortuna as the author or owner of the artwork, its falsity follows directly from the well-pleaded allegation that Lapham—not Fortuna—created and owns the Work.

Fortuna's contrary interpretation may be tested on a developed record. It does not establish that Count II is implausible.

**C. <u>The First Amended Complaint Plausibly Alleges That Fortuna Knew the CMI Was False.</u>**

Section 1202(a) requires a plaintiff to allege that the defendant knew the CMI was false. *Penske Media Corp.* 548 F. Supp. 3d at 381. The First Amended Complaint does so through specific factual allegations, not a bare recitation of the statutory language.

Lapham alleges that Fortuna obtained access to the Work through an agreement authorizing only the production and display of fifteen large-format artworks in the hotel. ECF 31 ¶ 15, Ex. 2. The agreement did not authorize use of the Work in a logo, trademark, brand identity, signage, advertising, website, or social-media content. Fortuna allegedly knew those

limitations and asked Indiewalls to obtain additional logo rights, but no addendum or other grant was obtained. *Id.*

Those allegations support a reasonable inference that Fortuna knew Lapham owned the Work and that Fortuna lacked authorization to claim the Work as part of its own brand identity. They also directly answer Fortuna's contention that the First Amended Complaint pleads only knowledge of infringement. Knowledge that Lapham owned the Work, coupled with knowledge that Fortuna never obtained the requested logo rights, supports the inference that Fortuna knew an ownership representation identifying Hotel Hugo was false.

The continued conduct alleged after notice reinforces that inference. Lapham alleges that he notified Fortuna in writing on February 10 and August 30, 2025, but Fortuna continued displaying and distributing the Logo. ECF 31 at ¶ 26. Fortuna admits receiving communications from Lapham and admits that the Logo remains in use. Those allegations permit the reasonable inference that Fortuna continued providing the challenged information despite actual notice of Lapham's ownership claim.

Knowledge may be alleged generally. *Lixenberg* 808 F. Supp. 3d at 642. Here, the First Amended Complaint goes further by alleging the limited agreement, Fortuna's request for additional logo rights, the absence of any further grant, and continued use after two written notices. At the pleading stage, that factual sequence adequately supports the required knowledge.

### D. <u>The First Amended Complaint Plausibly Alleges Intent to Induce, Enable, Facilitate, or Conceal Infringement.</u>

Section 1202(a) separately requires an intent to induce, enable, facilitate, or conceal infringement. 17 U.S.C.S. § 1202. Lapham pleads that intent with allegations explaining how Fortuna's false ownership presentation furthered its unauthorized reproduction and distribution of the Work. ECF 31.

The First Amended Complaint alleges that presenting the Work as Fortuna's own mark enabled Fortuna's printers, sign makers, web developers, advertising vendors, and third-party booking and travel platforms to reproduce and display the Work without inquiring whether Fortuna had obtained a license from its true owner. *Id*. at ¶ 25. It also alleges that the false presentation discouraged identification of Lapham, concealed the infringement from downstream distributors and the public, and obscured the circumstances through which Fortuna obtained access to the Work. *Id*. Fortuna allegedly distributed the Logo through its website, signage, hotel materials, digital advertising, social-media accounts, and booking channels.

These are factual allegations describing both the purpose and operation of the false CMI. They permit the reasonable inference that presenting "Hotel Hugo" as the owner of the artwork facilitated repeated reproduction by parties who would otherwise have had reason to investigate whether Fortuna possessed the necessary rights.

Fortuna responds that these allegations describe only consequences, not intent. That argument demands proof of subjective intent at the pleading stage. Rule 9 permits intent and knowledge to be alleged generally, and plausible allegations that a defendant supplied its own CMI in place of the creator's information may support an inference that the defendant intended to facilitate infringement or conceal ownership. *Lixenberg* 808 F. Supp. 3d at 642.

Nor does Fortuna's prominent public display of the Logo negate concealment as a matter of law. The alleged concealment concerns the identity of the Work's true author and owner and Fortuna's lack of authority—not the physical existence of the Logo. The First Amended Complaint alleges that the Logo carried no artist credit and disclosed neither Lapham's ownership nor the limited source of Fortuna's access to the Work. Publicly displaying the Work

under Fortuna's own ownership markers is entirely consistent with concealing Lapham's rights and the unauthorized nature of the use.

The allegations also distinguish this case from one involving only a defendant's unsupported business name near an image. Lapham alleges that Fortuna knew the agreement was limited, sought additional logo rights, failed to obtain them, integrated the Work into its own Logo, claimed ownership of the relevant logos and graphics, distributed that presentation through numerous commercial channels, and continued doing so after written notice. Taken together, those allegations plausibly support the statutory intent requirement.

## IV. CONCLUSION.

WHEREFORE, for the foregoing reasons, Plaintiff Richard Lapham respectfully requests that the Court deny Defendant Fortuna Realty Hotel Soho LLC's motion to dismiss Count II of the First Amended Complaint. If the Court identifies any pleading deficiency, Plaintiff alternatively requests leave to amend.

Dated: November 25, 2026

Respectfully submitted,

*/s/ Joseph A. Dunne*
JOSEPH A. DUNNE
(JD0674)
joseph.dunne@sriplaw.com

JORDAN I. ABISROR
Bar Number: 6139190
jordan.abisror@sriplaw.com

**SRIPLAW, P. A.**
41 Madison Avenue
25th Floor
New York, New York 10010
646.475.9070 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Richard Lapham*